```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------X
                                              |
ALLAN GREEN, HANA GREEN, WHITE BUFFALO,       |
LLC, DEAN JANSSEN, KATHLEEN JANSSEN,          |
JAMES MICHAEL DUNIGAN, NENA M. DUNIGAN,       |
ABILENE TRADING, LLC, CHRIS MALETIS,          |
SUSAN E. MALETIS, JAMES D. INGSTAD,           |
VICTORIA S. INGSTAD, THOMAS E. INGSTAD,       |
FARGO TRADING, LLC, and TEI TRADING, LLC,     |   06 Civ. 4156 (KMW)
                                              |
                Plaintiffs,                   |   OPINION AND ORDER
                                              |
        -against-                             |
                                              |
ANDREW D. BEER and SAMYAK C. VEERA,           |
                                              |
                Defendants.                   |
                                              |
---------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:
```

Plaintiffs, thirteen individuals and four limited liability corporations, invested in a tax-shelter scheme promoted by Defendants Andrew D. Beer and Samyak C. Veera. Defendants allegedly advised Plaintiffs that the scheme would generate both real profits and lawful capital losses. The IRS disallowed Plaintiffs' claimed tax savings, however, and it forced Plaintiffs to pay a substantial settlement. Plaintiffs have now filed suit, alleging unjust enrichment, breach of fiduciary duty, fraud, negligent misrepresentation, and civil conspiracy.

Both Defendants have moved to dismiss all counts, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(6), and 12(b)(7). For the following reasons, the motions are granted in part and denied in part.

1

**BACKGROUND**

The Court assumes the following facts, drawn from the Complaint, to be true for purposes of these motions to dismiss.

Plaintiffs are individuals and corporations residing in California, Delaware, Florida, North Dakota, Oregon, Texas, and Canada.[1]  (Compl. ¶¶ 4-12.)  In 2000, associates of Defendants (either Deutsche Bank or various accounting firms) approached Plaintiffs with an investment proposal known as the "COINS Strategy."  (Id. ¶¶ 15 n.2, 36.)  After Plaintiffs expressed initial interest, the firms arranged meetings between Plaintiffs and Defendants to explain the strategy in greater detail.  (Id. ¶ 36.)  Defendants described the COINS Strategy as a legitimate type of foreign currency transaction that bore little risk of loss but had the potential to generate large profits and significant tax advantages.[2]  (Id. ¶¶ 36-37.)  Defendants offered

---

[1] The Complaint does not clearly specify the principal places of business of Plaintiffs Abilene Trading, LLC and White Buffalo, LLC. Any Amended Complaint should more precisely state the citizenship of all Plaintiffs.

[2] Although the intricacies of the COINS Strategy are not relevant to this motion to dismiss, some background may be helpful for understanding Plaintiffs' claims.  The strategy is one of a family of tax shelters commonly known by the name "Son of BOSS."  COINS investors bought and sold offsetting pairs of options related to foreign currency exchange rates on given future dates.  The investments were designed to ensure that the gain to the investors from the first option was matched by the loss to the investors from the second option, resulting in zero actual profit or loss.  The investors then transferred the options to a partnership, increasing the basis of their partnership interest by the value of the option purchased but _not_ decreasing it by the value of the option sold. After the expiration of the options, the investors asked to be

Plaintiffs an opinion letter from a tax law firm to confirm the legality of the transaction; Plaintiffs accepted, and paid the law firm a large fee. (Id. ¶ 41.) Relying on Defendants' assurances, Plaintiffs then agreed to engage in the strategy. (Id. ¶ 28.) The strategy, however, was designed principally to reap large fees from Plaintiffs. (Id. ¶¶ 30, 79.) Defendants knew or should have known that, in reality, the COINS Strategy was a transaction without economic substance that had no reasonable possibility of turning a genuine profit. (Id. ¶ 27.) They also knew or should have known that the IRS considered the COINS Strategy improper and would disallow Plaintiffs' claimed tax losses. (Id. ¶¶ 60-64.)

　　　Plaintiffs engaged in the COINS Strategy between June and December 2000, executing various options contracts with Deutsche Bank and following the steps of the strategy with directions from Defendants and others. (Id. ¶¶ 42-59.) When the IRS reiterated its anti-COINS stance in an official notice in August 2000, an accounting firm working with Defendants wrote to some Plaintiffs, with Defendants' knowledge, to reassure them that the tax shelter would withstand IRS scrutiny. (Id. ¶ 65.) Two years later, Defendants and their associates failed to advise Plaintiffs to

---

redeemed out of the partnership in exchange for stock. They then sold the stock and claimed the resulting drop in basis as a capital loss. See Compl. ¶¶ 17-19, 22-25, 39-40. See generally Susan Cleary Morse, The How and Why of the New Public Corporation Tax Shelter Compliance Norm, 75 Fordham L. Rev. 961, 995 (2006) (explaining Son of BOSS transactions).

take advantage of an IRS amnesty program.  (Id. ¶ 76.)

Plaintiffs were ultimately audited by the IRS.  (Id. ¶ 74.) They settled with the Service in 2004 for the full amount of back taxes owed plus penalties.  (Id. ¶ 88.)

**STANDARD OF REVIEW**

"A motion to dismiss should not be granted unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff[s] can prove no set of facts which would entitle [them] to relief."  United States v. Baylor Univ. Med. Ctr., 469 F.3d 263, 267 (2d Cir. 2006) (internal quotation marks omitted).  The Court must accept all allegations in the Complaint as true and draw any inferences in the light most favorable to Plaintiffs.  Id.

**DISCUSSION**

**I.   Unjust Enrichment**

The First Claim of the Complaint alleges that because Defendants recommended that Plaintiffs employ the COINS Strategy even though they knew it would not turn a profit or pass muster with the IRS, Defendants' receipt of fees from Plaintiffs constitutes unjust enrichment.[3]

---

[3] The First Claim also requests a declaratory judgment that Plaintiffs' options contracts with Deutsche Bank were unenforceable. Defendants moved to dismiss the declaratory judgment demand pursuant

"To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" Citibank, N.A. v. Walker, 787 N.Y.S.2d 48, 49 (App. Div. 2004) (quoting Paramount Film Distrib. Corp. v. State, 285 N.E.2d 695, 698 (N.Y. 1972)) (alteration in original). Unjust enrichment does not depend on performance of a wrongful act, however, and even innocent parties may be unjustly enriched. Cruz v. McAneney, 816 N.Y.S.2d 486, 491 (App. Div. 2006). Here, Plaintiffs have alleged that they paid fees to Defendants (Compl. ¶¶ 87, 94), satisfying the first two elements of unjust enrichment. They have also alleged that Defendants' sales pitch and subsequent advice to Plaintiffs contained misrepresentations and omissions intended to induce Plaintiffs to pursue the COINS Strategy. (Id. ¶¶ 26-28, 30, 61, 64-68, 71-73, 75, 77-79, 85, 93-94). If a jury were to find these allegations to be true, it could reasonably decide that equity and good conscience militate against Defendants' retaining the fees paid.

Defendants argue that the unjust enrichment claim is precluded by the existence of express agreements governing the

---

to Federal Rules of Civil Procedure 12(b)(1), (6), and (7). Plaintiffs now concede that the request for a declaratory judgment is untenable (see Pls.' Mem. in Opp'n to Veera Motion 1 n.2.), and it is therefore dismissed.

payment of fees. They have submitted copies of currency management agreements ("CMAs") between ten[4] of the seventeen Plaintiffs and Equilibrium Currency Trading, LLC ("Equilibrium"), a company founded by Defendants, as well as copies of investment management agreements ("IMAs") between three of those Plaintiffs and Bricolage Capital, LLC ("Bricolage"), another of Defendants' companies.[5] (See Beer Aff. Exs. 1-8.) Each of the CMAs and IMAs was signed by either Defendant Beer or Defendant Veera on behalf of Equilibrium and Bricolage; each contains a section entitled "Fees" that describes the method by which currency- and investment-management fees shall be calculated and paid.[6] (Id.

---

[4] Neither party has stated whether similar agreements exist with respect to every Plaintiff.

[5] The Court may properly consider the CMAs and IMAs without converting this motion to a motion for summary judgment. Although Plaintiffs did not attach these documents as exhibits to the Complaint, the Court may consider any document on which a plaintiff "solely relies and which is integral to the complaint." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). A document is integral to a complaint if the complaint "relies heavily upon [the document's] terms and effect." Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (internal quotation marks omitted). Here, the Complaint is replete with allegations concerning the COINS Strategy. Plaintiffs appear to have entered into the CMAs and IMAs for the purpose of carrying out that strategy. (See Pls.' Mem. in Opp'n to Beer Motion 9 ("Plaintiffs have alleged that they entered into the [COINS] Strategy and, consequently, the Bricolage and Equilibrium Agreements . . . .").) The Complaint can thus be said to rely heavily on the effect of the CMAs and IMAs.

[6] Defendant Beer argues, in passing, that because the agreements require the Plaintiff-signatories to pay fees to Equilibrium and Bricolage rather than directly to Defendants, Plaintiffs cannot maintain a claim against Beer. (Beer Mem. of Law 3.) This distinction is irrelevant to an unjust enrichment claim so long as Defendants profited unfairly at Plaintiffs' expense, as Plaintiffs allege. Cruz, 816 N.Y.S.2d at 491; see also Simonds v. Simonds, 380

Exs. 1-8, ¶ 4.)  Defendants contend that these fee clauses constitute a written agreement encompassing the subject matter of the dispute, barring any unjust enrichment claim.

"The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987).  But the existence of a contract does not require dismissal of an unjust enrichment claim where the claim "is based on alleged wrongdoing not covered by the contract." EBC I, Inc. v. Goldman Sachs & Co., 777 N.Y.S.2d 440, 444 (App. Div. 2004); see also Niagara Mohawk Power Corp. v. Freed, 696 N.Y.S.2d 600, 602-03 (App. Div. 1999) (holding unjust enrichment claim not precluded where plaintiff alleges contract was induced by fraud).  Here, because Plaintiffs' claim is rooted in the allegation that Defendants misrepresented and concealed material information, Plaintiffs' agreements with Equilibrium and Bricolage do not preclude an unjust enrichment claim.

Defendant Veera further argues that the claim must be dismissed because Deutsche Bank is indispensable to its resolution.  The First Claim initially alleged that Plaintiffs' options contracts with Deutsche Bank should be declared illusory

---

N.E.2d 189, 194-95 (N.Y. 1978) (permitting unjust enrichment claim against unwitting beneficiary of decedent's broken promise to plaintiff).

or unenforceable because the contracts had no possibility of turning a profit.  Plaintiffs concede that a motion for such a declaration would require Deutsche Bank's participation.  However, Plaintiffs have also alleged wrongful acts by Defendants that are unrelated to the Deutsche Bank contracts' lack of economic substance -- notably, Defendants' intentional misrepresentation of the likely IRS treatment of the COINS Strategy.  (Compl. ¶¶ 61, 64-68, 71-73, 75, 85.)  While the First Claim of the Complaint is not worded with perfect clarity, Defendants have nonetheless alleged facts that, if taken as true, would state a claim for unjust enrichment without the need to join any absent party.

## II.  Breach of Fiduciary Duty

The Second Claim alleges that Defendants breached a fiduciary duty to Plaintiffs.  In New York, a cause of action for breach of fiduciary duty has three elements: (1) breach by a fiduciary of a duty owed to plaintiff, (2) defendant's knowing participation in the breach, and (3) damages.  <u>SCS Commc'ns, Inc. v. Herrick Co.</u>, 360 F.3d 329, 342 (2d Cir. 2004).  The test for whether parties enjoyed a fiduciary relationship is fact-specific, but the main question is whether "a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge."  <u>Wiener v. Lazard Freres & Co.</u>,

672 N.Y.S.2d 8, 14 (App. Div. 1998); see also Penato v. George, 383 N.Y.S.2d 900, 904-05 (App. Div. 1976).  However, under New York law, "the requisite high degree of dominance and reliance must have existed prior to the transaction giving rise to the alleged wrong, and not as a result of it."  Societe Nationale d'Exploitation Industrielle des Tabacs et Allumettes v. Salomon Bros. Int'l Ltd., 674 N.Y.S.2d 648, 649 (App. Div. 1998) (citing Elghanian v. Harvey, 671 N.Y.S.2d 266, 266 (App. Div. 1998)); see also Weis v. Selected Meat Packers, Inc., 458 N.Y.S.2d 313, 314-15 (App. Div. 1983).[7]  Here, Plaintiffs have not alleged that they enjoyed a relationship of trust with Defendants before the advent of the tax-shelter transaction.  Accordingly, Plaintiffs have not properly alleged the existence of a fiduciary relationship.[8]  The Second Claim must therefore be dismissed.

---

[7] Although Plaintiffs try to distinguish the facts here on the ground that Defendants "designed a fraudulent scheme and then lured the Plaintiffs into the scheme" (Pls.' Mem. in Opp'n to Veera Motion 11), none of the cases cited turns on, or even mentions, whether the defendants proposed a business transaction to the plaintiffs or vice versa.

[8] Plaintiffs' recitation of the elements of a duty to disclose is not relevant.  A fiduciary relationship is a necessary element of a cause of action for fraudulent failure to disclose, Wirsing v. Donzi Marine Inc., 818 N.Y.S.2d 148, 150 (App. Div. 2006), but a party's superior knowledge does not itself create a fiduciary relationship, Bd. of Managers of the Highpoint Condo. ex rel. Unit Owners of Highpoint Condo. v. East/West Venture, Haseko (40th), Inc., 717 N.Y.S.2d 563, 564 (App. Div. 2000).

### III. Fraud

The Third Claim alleges that Defendants' purported misrepresentations and omissions constituted fraud. "To recover damages for fraud, a plaintiff must prove (1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury." Ozelkan v. Tyree Bros. Envtl. Servs., Inc., 815 N.Y.S.2d 265, 267 (App. Div. 2006) (internal quotation marks omitted). These elements must be proven by clear and convincing evidence. Gaidon v. Guardian Life Ins. Co. of Am., 725 N.E.2d 598, 607 (N.Y. 1999). "In addition, a cause of action to recover damages for fraudulent concealment requires . . . an allegation that the defendant had a duty to disclose material information," Ozelkan, 815 N.Y.S.2d at 267 (internal quotation marks omitted) (omission in original), although "such a showing is not required where in addition to nondisclosure of material facts, [one] uses artifice, wiles, or deceptive conduct designed to throw the other party off his guard and lull him into a false sense of security," Small v. Lorillard Tobacco Co., 672 N.Y.S.2d 601, 610 (Sup. Ct. 1997), rev'd on other grounds, 679 N.Y.S.2d 593 (App. Div. 1998) (internal quotation marks omitted) (alteration in original); see also Mobil

10

Oil Corp. v. Joshi, 609 N.Y.S.2d 214, 215 (App. Div. 1994) (noting that silence is not fraudulent concealment "without some act which deceived" plaintiff).  A duty to disclose may arise either from a fiduciary relationship or from one party's superior knowledge of essential facts whose nondisclosure would render a transaction inherently unfair.  Jana L. v. W. 129th St. Realty Corp., 802 N.Y.S.2d 132, 134 (App. Div. 2005).

Defendants argue that Plaintiffs have not satisfied the heightened pleading standards for fraud.  Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  The Second Circuit has specified that, where a claim is subject to Rule 9(b), "the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation."  Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990).  Moreover, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."  DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987); see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged

11

fraudulent statements to 'defendants'.").

The allegations of fraud in the Complaint can be divided into two types: (1) those attributed to "the Defendants and the Other Participants," whom the Complaint defines as Deutsche Bank, the law firm that prepared opinion letters for Plaintiffs, and the accounting firms that promoted the strategy (Compl. ¶ 15 n.2.); and (2) those attributed to "Defendants" alone or to Beer or Veera individually.  The allegations in the first category impermissibly lump Defendants together with an unspecified number of non-party entities.  Because of this lumping, these allegations fail to provide Defendants with fair notice.  See DiVittorio, 822 F.2d at 1247.

As for the allegations in the second category, district courts are divided on whether a complaint may allege elements of fraud against "defendants" in the aggregate if only two defendants are present in the case.  Compare Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 248 (S.D.N.Y. 2006) ("The Complaint . . . fails to identify which of the two Defendants made each statement or omission."), with Gelles v. TDA Indus., Inc., No. 90 Civ. 5133 (MBM), 1991 WL 39673, at *6 (S.D.N.Y. Mar. 18, 1991) ("When there are only two defendants, who are alleged to have had identical roles in a clearly defined scheme[,] . . . a requirement that plaintiff attribute each recitation of a misstatement to a particular defendant at an exact time and

12

location would violate the liberal pleading requirements of the Federal Rules."). The Court need not decide this question, however, because the allegations in this group, notably those in paragraph 103 of the Complaint, are fatally deficient in other ways.[9] Paragraph 103 purports to list forty-eight "knowingly false affirmative representations and intentional omissions of material facts" made by "Defendants." (Compl. ¶ 103.) These forty-eight subparagraphs are reproduced identically in the Second Claim (alleging breach of fiduciary duty) and the Fourth Claim (alleging negligent misrepresentation). Many contain sweeping generalizations,[10] others do not relate to the elements of fraud,[11] and none states time, place, or speaker with particularity. Moreover, a number of the actions attributed to "the Defendants" in paragraph 103 are attributed to "the Defendants and the Other Participants" elsewhere in the

---

[9] Without the support of the allegations in paragraph 103, the scattered portions of the Complaint that refer only to "Defendants" or to Beer or Veera individually are insufficient to state a claim for fraud.

[10] (E.g., Compl. ¶ 103(1) ("[t]aking advantage of a relationship of trust and confidence and using their knowledge of Plaintiffs' finances to solicit Plaintiffs for the COINS Strategy"); id. ¶ 103(10) ("[c]reating, designing, implementing, promoting, advising, recommending, and selling an illegal, improper, and invalid tax shelter that is disallowed and/or prohibited by the IRS").)

[11] (E.g., Compl. ¶ 103(4) ("[c]harging and collecting unreasonable, excessive, and unethical fees"); id. ¶ 103(26) ("[f]ailing to learn the facts as to whether the FX Contracts were appropriate for the Plaintiffs, either as an investment or as part of a tax strategy").)

Complaint.[12]  These flaws render the allegations deficient under Rule 9(b).  The Third Claim is therefore dismissed.[13]

## IV. Negligent Misrepresentation

The Fourth Claim of the Complaint alleges that Defendants are liable to Plaintiffs for negligent misrepresentation. "[U]nder New York law, a plaintiff may recover for negligent misrepresentation only where the defendant owes her a fiduciary duty."  Stewart v. Jackson & Nash, 976 F.2d 86, 90 (2d Cir. 1992); accord Thomas v. McLaughlin, 715 N.Y.S.2d 388, 389 (App. Div. 2000).  As explained above, the Complaint does not allege that Plaintiffs enjoyed a relationship of trust with Defendants before the advent of the tax-shelter transaction; accordingly, Plaintiffs cannot establish that Defendants owed them a fiduciary duty.  The negligent misrepresentation claim is therefore dismissed.

---

[12] (Compare, e.g., Compl. ¶ 103(14) ("[T]he Defendants . . . [a]dvis[ed] Plaintiffs that the losses created by the COINS Strategy were legitimate, proper, and in accordance with all applicable tax laws, rules, and regulations . . . ."), with id. ¶ 41 ("The Defendants and Other Participants advised Plaintiffs that the losses created by the COINS Strategy were legitimate and in accordance with all applicable tax laws, rules, and regulations . . . .").)

[13] Defendant Beer argues that Plaintiffs' fraud claims are precluded by express provisions in the CMAs and IMAs with Bricolage and Equilibrium.  The Court need not address these arguments in order to resolve this motion.  Furthermore, it is prudent not to do so, because Beer did not develop them fully until his reply brief.  See generally United States v. Gigante, 39 F.3d 42, 50 n.2 (2d Cir. 1994) ("Arguments may not be made for the first time in a reply brief.").

**V.    Civil Conspiracy**

The last count of the Complaint charges Defendants with civil conspiracy.  In New York, plaintiffs alleging conspiracy must prove (1) a corrupt agreement between two or more people, (2) an overt act, (3) defendants' intentional participation in the furtherance of a plan or purpose, and (4) damage.  Kashi v. Gratsos, 790 F.2d 1050, 1055 (2d Cir. 1986) (citing Suarez v. Underwood, 426 N.Y.S.2d 208, 210 (Sup. Ct. 1980)).  Moreover, Plaintiffs must properly plead some underlying tort, because New York does not recognize an independent tort of conspiracy.  See Crigger v. Fahnestock & Co., 443 F.3d 230, 237 (2d Cir. 2006).

For the reasons already explained, Plaintiffs' breach of fiduciary duty, fraud, and negligent misrepresentation claims must be dismissed.  Therefore, as Plaintiffs concede, the conspiracy claim must also be dismissed.  (See Pls.' Mem. in Opp'n to Veera Motion 13 (noting that conspiracy claim is supported by "underlying torts of fraud, breach of fiduciary duty, and negligent misrepresentation").)[14]

---

[14] Although Plaintiffs properly alleged a claim of unjust enrichment, unjust enrichment sounds not in tort but in quasi contract.  See, e.g., Goldstein v. CIBC World Markets Corp., 776 N.Y.S.2d 12, 14 (App. Div. 2004).

15

**VI.  Leave to Amend**

Plaintiffs have requested leave to amend the Complaint to attempt to cure any deficiencies. Leave to amend should be "freely given when justice so requires," Fed. R. Civ. P. 15(a), and it is therefore "the usual practice upon granting a motion to dismiss to allow leave to replead," Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). Plaintiffs are granted leave to replead within twenty days of this Opinion and Order in a manner consistent with this Opinion.

**CONCLUSION**

For the reasons stated above, Defendants' motions to dismiss the declaratory judgment, breach of fiduciary duty, fraud, negligent misrepresentation, and conspiracy claims are GRANTED. Defendants' motions to dismiss the unjust enrichment claim are DENIED. Plaintiffs' request for leave to amend is GRANTED.

SO ORDERED.
Dated:   New York, New York
         February 18, 2007

                                   /s/ Kimba M. Wood
                                   Kimba M. Wood
                                   United States District Judge

16