```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         |
ALLAN GREEN, HANA GREEN, WHITE BUFFALO,  |
LLC, DEAN JANSSEN, KATHLEEN JANSSEN,     |
JAMES MICHAEL DUNIGAN, NENA M. DUNIGAN,  |
ABILENE TRADING, LLC, CHRIS C. MALETIS,  |
III, SUSAN E. MALETIS, JAMES D. INGSTAD, |
VICTORIA S. INGSTAD, THOMAS E. INGSTAD,  |
FARGO TRADING, LLC, and TEI TRADING, LLC,|06 Civ. 4156(KMW)(JCF)
                                         |
              Plaintiffs,                |  OPINION AND ORDER
                                         |  _____
      -against-                          |
                                         |
ANDREW D. BEER and SAMYAK C. VEERA,      |
                                         |
              Defendants.                |
                                         |
-----------------------------------------X
```

KIMBA M. WOOD, U.S.D.J.:

Plaintiffs, thirteen individuals and four limited liability corporations, invested in a tax-shelter scheme promoted by Defendants Andrew D. Beer ("Beer") and Samyak C. Veera ("Veera"). Defendants allegedly advised Plaintiffs that the scheme would generate both real profits and lawful capital losses. The IRS disallowed Plaintiffs' claimed tax savings, however, and the IRS forced Plaintiffs to pay a substantial settlement.

Plaintiffs filed suit, alleging unjust enrichment, breach of fiduciary duty, fraud, negligent misrepresentation, and civil conspiracy. The Court dismissed Plaintiffs' breach of fiduciary duty, fraud, negligent misrepresentation, and civil conspiracy claims by Order dated February 22, 2007 (the "2007 Order"). (D.E. 26.) Plaintiffs amended their complaint, alleging unjust

1

enrichment, fraud, and civil conspiracy ("Amended Complaint").[1] (D.E. 28.)

Both Defendants move to dismiss the fraud claim, and Veera also moves to dismiss the unjust enrichment claim, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  (D.E. 31.[2]) As explained in further detail below, the Court DENIES Defendants' motions as to all claims.  However, the Court agrees with Defendants that Plaintiffs have failed to sufficiently plead Defendants' vicarious liability for fraud based on a theory of agency.

**BACKGROUND**

The Court assumes the following facts, drawn from the

---

[1] Although Plaintiffs bring separate claims for fraud and civil conspiracy, the same tortious conduct underlies both claims.  As the Court indicated in the 2007 Order, under New York law, there is no independent action for civil conspiracy.  See 2007 Order at 15; Crigger v. Fahnestock & Co., 443 F.3d 230, 237 (2d Cir. 2006). Instead, civil conspiracy is a theory of vicarious liability pursuant to which defendants can be held liable for the fraudulent actions of their co-conspirators.  See Beck v. Prupis, 529 U.S. 494, 503 (2000) (summarizing the common law tradition of treating civil conspiracy as a theory of vicarious liability); cf. Canada, Inc. v. Aspen Technology, Inc., 544 F. Supp. 2d 199, 231-32 (S.D.N.Y. 2008) (noting that a conspiracy claim that turns on the same underlying tort claimed elsewhere in the complaint is duplicative).  Plaintiffs also plead Defendants' vicarious liability pursuant to a theory of agency.
For the purposes of discussing the merits of Defendants' motions to dismiss, the Court analyzes Plaintiffs' civil conspiracy allegations, along with Plaintiffs' allegations of agency, as alternative theories pursuant to which Plaintiffs seek to hold Defendants vicariously liable for fraud.

[2] The Court notes that only Defendant Beer's motion to dismiss has been properly docketed with the Court.  Defendant Veera properly docketed only his memorandum of law in support of his motion to dismiss.  (D.E. 37.)  Defendant Veera shall properly docket his motion to dismiss by April 15, 2009.

Amended Complaint and from agreements signed by both Plaintiffs and companies created by Defendants,[3] to be true for purposes of these motions to dismiss.

Plaintiffs are individuals and corporations residing in California, Delaware, Florida, North Dakota, Oregon, Texas, and Canada.  (Am. Compl. ¶¶ 4-12.)  Plaintiffs refer to themselves as the Green, Janssen, Maletis, Ingstad, and Dunigan Plaintiffs.

In 2000, associates of Defendants who were employees of various accounting firms, including BDO Seidman, LLP; RSM McGladrey, Inc.; Condley & Company; and Arthur Andersen, LLP,[4] approached Plaintiffs with a tax strategy known as the "COINS

---

[3] As explained in the 2007 Order, in evaluating the sufficiency of Plaintiffs' allegations, the Court may consider the currency management agreements ("CMAs") entered into by eleven of the seventeen Plaintiffs with Equilibrium Currency Trading, LLC ("Equilibrium") as well as copies of investment management agreements ("IMAs") entered into by three of those Plaintiffs with Bricolage Capital, LLC ("Bricolage") (Equilibrium and Bricolage are companies founded by Defendants), because they are integral to the complaint.  (See 2007 Beer Aff. Exs. 1-8; 2007 Order 6 n.5.)  The Complaint makes its allegations on behalf of the "Green Plaintiffs," the "Janssen Plaintiffs," the "Dunigan Plaintiffs," the "Maletis Plaintiffs," and the "Ingstad Plaintiffs" collectively.  While there are five Plaintiffs who are not signatories to the considered agreements, someone in each of these groups signed one of the CMAs and, in some instances also an IMA, considered by the Court.

[4] In their amended complaint, Plaintiffs refer to Defendants' associates as Defendants' agents.  Whether an agency relationship exists is a question of law, not fact.  Because Defendants contest whether Plaintiffs have sufficiently alleged that Defendants' associates were Defendants' agents, the Court uses the term "associate" rather than "agent" to refer to these individuals.

Strategy."[5]  (Id. at ¶¶ 15 n.2, 38.)

After Plaintiffs expressed initial interest, Defendants'
associates arranged meetings between most of the Plaintiffs and
Defendants to explain the strategy in greater detail.[6]  (Id. at
¶¶ 38, 40, 43, 49, 51.)  Between May and September 2000,
Defendants communicated in person, by phone, or via their
associates with Plaintiffs or Plaintiffs' agents.  (Id. at ¶¶ 40,
43, 45, 49, 50-51.)  In these conversations, Defendants (or their
associates) explained how the COINS Strategy worked, including
that:

> (1) Plaintiffs (or entities they created to engage in
> the Strategy) would buy and sell pairs of foreign
> currency options with "extremely close strike prices,
> in almost identical amounts," designed so that their
> costs and sale premiums would "largely (though not

---

[5] The COINS Strategy is one of a family of tax shelters commonly
known by the name "Son of BOSS."  COINS investors bought and sold
offsetting pairs of options related to foreign currency exchange rates
on given future dates.  The investments were designed to ensure that
the gain to the investors from the first option was matched by the
loss to the investors from the second option, resulting in zero actual
profit or loss.  The investors then transferred the options to a
partnership, increasing the basis of their partnership interest by the
value of the option purchased, but not decreasing it by the value of
the option sold.  After the expiration of the options, the investors
asked to be redeemed out of the partnership in exchange for stock.
They then sold the stock and claimed the resulting drop in basis as a
capital loss.  (See Am. Compl. ¶¶ 18-26, 37, 59.)  See generally Susan
Cleary Morse, The How and Why of the New Public Corporation Tax
Shelter Compliance Norm, 75 Fordham L. Rev. 961, 995 (2006)
(explaining Son of BOSS transactions).

[6] The Dunigan Plaintiffs never interacted directly with
Defendants.  (Am. Compl. ¶¶ 45-48.)

entirely) offset each other," (id. at ¶ 37);

(2) Plaintiffs would contribute their options to a
partnership created by Defendants, (id.);

(3) Plaintiffs would ask to be redeemed out of the
partnership with their interest paid in stock after
their offsetting options expired, (id.);

(4) Plaintiffs would then sell these stocks, (id.); and

(5) these sales would realize "large losses" that the
Plaintiffs could apply against their capital gains for
that year.  (Id. at ¶ 40.)

In addition, Defendants or their associates told the Green,
Janssen, and Ingstad Plaintiffs, either directly or through these
Plaintiffs' agents, that the COINS Strategy transactions had
little risk of loss, and potentially could generate a substantial
profit.  (Id. at ¶¶ 41, 43, 51.)  Defendants knew that, in
reality, the COINS Strategy was a transaction that had no
reasonable possibility of turning a profit.  (Id. at ¶¶ 28, 103-
104.)

Defendants or their associates described the COINS Strategy
to Plaintiffs or Plaintiffs' agents as a legitimate foreign
currency transaction.  (Id. at ¶¶ 40-51.)  Defendants or their
associates (1) offered Plaintiffs or Plaintiffs' agents an
"independent" opinion letter from a tax law firm, and (2) told
Plaintiffs or their agents that this letter would confirm the

legality of the transaction and insulate the Plaintiffs from any possible IRS penalties.  (Id. at ¶¶ 40-51.)  The letter Plaintiffs received stated that, to the extent that the COINS Strategy had "an expectation of a 'speculative, but substantial profit,'" such profit would result only from the "small chance" that a profitable trade would occur without being offset by a losing trade.  (Id. at ¶ 24, n.8.)  The letter also stated that it was "'more likely than not'" that the Plaintiffs would be able to claim the capital losses promised by Defendants without running afoul of a number of IRS Codes and Regulations.  (Id. at ¶ 79.)  Finally the letter advised Plaintiffs that they need not disclose the COINS Strategy transactions as a tax shelter on their tax returns.  (Id.)

Relying on Defendants' or their associates' assurances as to the substance and legality of the COINS transactions, Plaintiffs then agreed to engage in the COINS Strategy.  (Id. at ¶¶ 29, 38-39.)  Plaintiffs signed CMAs and IMAs (collectively, "Agreements") with Bricolage and Equilibrium ("B and E").[7]  The Agreements provided that B and E may pay a portion of Plaintiffs' fees to B and E's "affiliates, and others, who introduced the Client [Plaintiffs] to [Defendants] or who may provide supplemental and client-related services."  (See, e.g., Beer Aff. Ex. 1 at 2.)  The agreements also stated that B and E or their

---

[7] CMAs and IMAs are defined supra note 2.

"affiliates or related persons may profit as principal or receive fees or other compensation in respect of such transactions and contracts."  (See, e.g., id. at 3)

Plaintiffs engaged in the COINS Strategy between June and December 2000, executing various options contracts with Deutsche Bank, with which Defendants were also associated, and following the steps of the COINS Strategy according to directions from Defendants and others.  (Am. Compl. ¶¶ 52-69.)

At the time the above events occurred, Defendants knew that the United States Internal Revenue Service ("IRS") considered the COINS Strategy improper and would disallow Plaintiffs' claimed tax losses.  (Id. at ¶¶ 71, 74, 103-104.)  The IRS had issued Notice 1999-59 (the "1999 IRS Notice") in December 1999, which "alert[ed] taxpayers and their representatives that . . . claimed tax losses for capital outlays that they have in fact recovered . . . [are] not allowable for Federal income tax purposes."  (Id. at ¶ 70.)  In August 2000, the IRS issued Notice 2000-44 (the "2000 IRS Notice"), which described the series of transactions in the COINS Strategy and stated that the "'purported losses from these transactions . . . are not allowable as deductions for Federal income tax purposes.'"  (Id. at ¶ 73.)  Soon after the 2000 IRS Notice was issued, accounting firms that were associates of Defendants and that had initially referred some Plaintiffs to Defendants, wrote to some Plaintiffs to reassure them that the

COINS Strategy would withstand IRS scrutiny.  (<u>Id.</u> at ¶ 75.)  The Defendants knew of these reassurances.  (<u>Id.</u>)  Two years later, Defendants and their associates failed to advise Plaintiffs to take advantage of an IRS amnesty program that would have, <u>inter alia</u>, allowed Plaintiffs to avoid penalties for underpaying their taxes, in exchange for Plaintiffs disclosing their involvement in the COINS Strategy to the IRS.  (<u>Id.</u> at ¶ 84.)

Plaintiffs were ultimately audited by the IRS.  (<u>Id.</u> at ¶ 82.)  They settled with the IRS in 2004 for the full amount of back taxes owed plus penalties.  (<u>Id.</u> at ¶ 96.)

## **STANDARD OF REVIEW**

In order to survive a motion to dismiss, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007); <u>see also</u> <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007) (finding <u>Twombly</u>'s motion to dismiss standard generally applicable).  In assessing whether Plaintiffs have met this standard, the Court must "constru[e] the complaint liberally, accepting all factual allegations . . . as true, and drawing all reasonable inferences in the plaintiff[s'] favor." <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56 (2d Cir. 2008).

However, "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual

allegation.'" Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). More than "labels and conclusions" are required, and "a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1965.

Furthermore, any "conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1092 (2d Cir. 1995); see also Fisk v. Letterman, 401 F. Supp. 362, 368 (S.D.N.Y. 2005) (dismissing complaint where Plaintiff's own assertions refuted the theory of her claim); Colodney v. Continuum Health Partners, No. 03 Civ. 7276, 2004 WL 829158, *7 (S.D.N.Y. April 15, 2004) (dismissing cause of action where a complaint alleged facts that demonstrated that an allegedly false statement was true).

Where a court deciding a motion to dismiss is considering materials extrinsic to the complaint, and the contents of these materials conflict with allegations in the complaint, "those allegations are insufficient to defeat a motion to dismiss." Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002). However, courts are cautioned that extrinsic materials are to be considered "for what they contain, not to prove the truth of their contents." Roth v. Jennings, 489 F.3d 499, 511 (2d Cir. 2007) (internal quotations omitted).

**DISCUSSION**

**I.   Unjust Enrichment**

The First Claim of the Amended Complaint alleges that Defendants' receipt of fees from Plaintiffs constitutes unjust enrichment because Defendants recommended that Plaintiffs employ the COINS Strategy even though they knew it would not turn a profit or pass muster with the IRS.  (Am. Compl. ¶¶ 99-100.)  The Court DENIES Veera's motion to dismiss as to this claim.[8]

"To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'"  Citibank, N.A. v. Walker, 787 N.Y.S.2d 48, 49 (2d Dep't 2004), abrogated on other grounds by Butler v. Catinella, 868 N.Y.S.2d 101, 105 (2d Dep't 2008), (quoting Paramount Film Distrib. Corp. v. State, 285 N.E.2d 695, 698 (N.Y. 1972)) (alteration in original).  Unjust enrichment does not depend on performance of a wrongful act, however, and even innocent parties may be unjustly enriched.  Cruz v. McAneney, 816 N.Y.S.2d 486, 491 (2d Dep't 2006).

The Court's 2007 Order found that Plaintiffs' original complaint sufficiently pled their unjust enrichment claim.  (2007

---

[8] Beer did not move to dismiss this claim.  (See Def. Beer's Mem. L. Supp. Mot. Dismiss ("Def. Beer's Mem. L.").)

Order 5.)  However, Veera contends that Plaintiffs' amended complaint alleges that Plaintiffs paid fees only to B and E, not directly to Veera, and thus does not allege Veera's individual liability.  (Veera's Mem. L. Supp. Mot. Dismiss ("Veera's Mem. L.") 17-20; Veera's Reply 10.)

The Court finds this claim without merit.  As an initial matter, the Court has already found that whether Plaintiffs' fees benefitted Defendants directly or indirectly is irrelevant to Plaintiffs' unjust enrichment claim.  (2007 Order 6 n.6.) Furthermore, even if Plaintiffs had to allege that Veera benefitted directly in order for their unjust enrichment claim to survive, they have done so.  (See, e.g., Am. Compl. ¶ 95 (alleging that the ten individual Plaintiffs "paid fees to the Defendants" and others); see also ¶¶ 36, 53, 87, and 105.)[9] Accordingly, the Court DENIES Veera's motion to dismiss as to Plaintiffs' unjust enrichment claim.

## II.  Fraud

Plaintiffs claim that Defendants' and their associates' misrepresentations and omissions constituted fraud and that Defendants are either directly liable for this fraud, or are

---

[9] The Court need not reach Veera's argument that, to the extent that he benefitted indirectly from the COINS Strategy, he is shielded by the limited liability law under which B and E were incorporated, such that the Court would have to "pierce the veil" of these companies to impose liability on Veera.  (Veera's Mot. Dismiss 17-20.)  The Court notes, however, that limited liability law does not shield those who have acted in bad faith, as Plaintiffs allege Veera has.  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1177 (2d Cir. 1993).

indirectly liable pursuant to theories of agency and/or civil conspiracy.[10]  For the reasons stated below, the Court finds that all Plaintiffs sufficiently allege that Defendants either directly defrauded them or conspired to defraud them, but no Plaintiffs sufficiently plead an agency theory of Defendants' liability.  Accordingly, the Court DENIES Defendants' motions to dismiss as to Plaintiffs' fraud and civil conspiracy claims, but agrees with Defendants that the Dunigan, Janssen, and Ingstad Plaintiffs have failed to sufficiently plead agency.

### A.   Defendants' Direct Liability

As explained below, the Court finds that Plaintiffs sufficiently allege Defendants' direct liability for fraud.

#### 1.   Legal Standard

##### a.   Elements of Fraud

"To recover damages for fraud, a plaintiff must prove (1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the

---

[10] Only some of the Plaintiffs claim that Beer and/or Veera are directly liable for fraud: (1) the Green and Maletis Plaintiffs claim Defendants are directly liable for fraud; (2) the Janssen Plaintiffs claim Veera is directly liable fraud; and (3) the Ingstad Plaintiffs claim Beer is directly liable for fraud.  All Plaintiffs claim that Defendants are vicariously liable for fraud: (1) all Plaintiffs claim that Defendants are liable pursuant to a theory of civil conspiracy; and (2) the Dunigan, Janssen, and Ingstad Plaintiffs claim that one or both Defendants are liable pursuant to a theory of agency.

misrepresentation or material omission, and (4) injury." Ozelkan
v. Tyree Bros. Envtl. Servs., Inc., 815 N.Y.S.2d 265, 267 (2d
Dep't 2006) (internal quotation marks omitted).

In order to claim fraud by omission, a plaintiff must
establish that a defendant had a duty to disclose any allegedly
omitted facts. Ozelkan, 815 N.Y.S.2d at 267. A duty to disclose
may arise either from a fiduciary relationship or where one party
(1) possesses superior knowledge that is (2) not readily
available to the other party and (3) "knows that the other party
is acting on the basis of mistaken knowledge." Aaron Ferer &
Sons Ltd. v. Chase Manhattan Bank, 731 F.2d 112, 123 (2d Cir.
1984).

In order to constitute a misrepresentation, a statement must
be factual, rather than an expression of an opinion.

"[A] representation of opinion or a prediction of
something which is hoped or expected to occur in the
future will not sustain an action for fraud. To
constitute actionable fraud, the false representation
relied upon must relate to a past or existing fact, or
something equivalent thereto."

Zanani v. Savad, 217 A.D.2d 696, 697 (N.Y. App. Div. 1995). See
also Matsumura v. Benihana Nat'l Corp., 542 F. Supp. 2d 245, 252
(S.D.N.Y. 2008) ("It is axiomatic . . . that predictive or
opinion statements about future events, without more, are not

misrepresentations"); 60A N.Y. Jur. 2d Fraud & Deceit § 33 ("what was susceptible of exact knowledge when the statement was made is usually considered as a matter of fact, whereas representations in regard to matters not susceptible of personal knowledge are generally to be regarded as mere expressions of opinion") (footnotes omitted).

### b.   Pleading Standard

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  The Second Circuit has specified that, where a claim is subject to Rule 9(b), "the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation."  Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990).  Moreover, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."  DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987); see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'.").

### 2.   Application

Plaintiffs claim fraud both by omission and by misrepresentation ("fraudulent actions").[11]  Plaintiffs sufficiently allege the two elements of their fraud claim that Defendants challenge:[12]  (1) Defendants' omission of a material fact or misrepresentation of a material fact which was false and which Defendants knew to be false, and (2) that Plaintiffs justifiably relied on Defendants' misrepresentations or material omissions.[13]

---

[11]  The Court addresses the question of whether Plaintiffs have sufficiently pled a theory of vicarious liability that would make Defendants liable for the fraudulent misrepresentations and omissions of Defendants' associates infra part II.B.  For the current analysis, the Court assumes Plaintiffs have done so.

[12]  Defendants challenge these aspects of Plaintiffs' fraud claim only to the extent that Plaintiffs seek to hold Defendants directly liable for fraud.  Accordingly, the Court does not consider whether Plaintiffs' allegations are sufficient as to the alleged fraudulent actions of Defendants' associates.

[13]  Defendants also argue that Plaintiffs' fraud claim does not meet the pleading standard of Rule 9(b).  (Beer Mem. L. 22-23; Veera Mem. L. 14-15.)  Specifically, Defendants contend that, because Plaintiffs' amended complaint refers several times to fraudulent actions taken by Beer, Veera, and their associates, the amended complaint fails to "inform each defendant of the nature of his alleged participation in the fraud" as required by Rule 9(b).  DiVittorio, 822 F.2d at 1247.

The Court finds this argument without merit.  First, these scattered examples do not constitute the sort of "widescale clumping" that Rule 9(b) disallows.  Three Crown Ltd., Partnership v. Caxton Corp., 817 F. Supp. 1033, 1040 (S.D.N.Y. 1993) (emphasis added).  Second, elsewhere in the amended complaint, Plaintiffs specify the who, what, when, and where of their fraud claim with sufficient particularity to cure any confusion these scattered clumped allegations may cause.  The amended complaint describes speakers by name; where a misrepresentation, omission, or mental state is attributed to more than one person, the amended complaint specifies that the allegation applies to all the people named.  Accordingly, the amended complaint gives Defendants sufficient notice of the fraudulent actions for which Plaintiffs seek to hold Defendants either directly or vicariously liable.

### a.   Omissions & Misrepresentations

Reading the amended complaint liberally, assuming the truth of Plaintiffs' factual allegations, and drawing all inferences in Plaintiffs' favor, as the Court must do when deciding a motion to dismiss, the Court concludes that Plaintiffs allege sufficient omissions and misrepresentations of material facts to support their claim that Defendants directly defrauded them.

### i.   Omissions

Only Veera contends that Plaintiffs have not sufficiently alleged that he omitted material facts.[14]  Plaintiffs argue that they have established Veera's duty to disclose based on his superior knowledge of the allegedly omitted facts.  (Pls.' Veera Opp'n 12.)  Veera contends that Plaintiffs insufficiently allege his knowledge was superior to theirs; in particular, Veera argues

---

[14] The 2007 Order found that Plaintiffs had failed to sufficiently allege that Defendants owed a fiduciary duty to Plaintiffs.  See 2007 Order 8-9.  Nonetheless, Plaintiffs' amended complaint alleges that Defendants had a duty to disclose based on their fiduciary relationship with Plaintiffs.  (Am. Compl. ¶ 30.)  However, Plaintiffs opposition to Defendants' motions to dismiss does not rely on this alleged fiduciary duty, and instead argues that Defendants had a duty to disclose based on Defendants' superior knowledge.  (Beer Opp'n 16-17; Veera Opp'n 12.)

Beer moves to dismiss Plaintiffs' fraud claim based on his lack of a duty to disclose, but does so only on the basis that Beer had no fiduciary duty towards Plaintiffs.  (Beer Mem. L. 20-21; Beer Reply 6.)  Plaintiffs appear to concede this point.  The Court finds that, for the reasons stated in its 2007 Order, Defendants had no fiduciary duty to Plaintiffs.  See 2007 Order 8-9.

Accordingly, the Court considers only whether Plaintiffs have alleged sufficient facts to establish that Defendants had a duty to disclose based on Defendants' superior knowledge.  Only Veera contends that Plaintiffs have not done so.

that Plaintiffs fail to allege that they themselves lacked ready access to the omitted information.[15]   (Veera Reply 2-4.)

Reading the amended complaint liberally and drawing all inferences in favor of Plaintiffs, the Court finds that Plaintiffs have sufficiently alleged that Veera had a duty to disclose at least some of the allegedly omitted information. Plaintiffs allege that Defendants failed to disclose that:

(1) The IRS considered trades like those involved in the COINS Strategy illegal and would penalize Defendants for claiming losses based on them, Am. Compl. ¶¶ 70-71, 73-74, 78, 83-84, 103(6), (13)-(19);

(2) Defendants were sharing the fees they collected from Plaintiffs with Defendants' associates, Am. Compl.

---

[15] Veera also argues that Plaintiffs fail to sufficiently allege that Veera knew the information he is alleged to have omitted; he claims that Plaintiffs merely allege that Veera knew or should have known various facts.  (Veera Reply 2.)

Veera is correct that allegations that a defendant knew or should have known omitted facts, without more, cannot establish a duty to disclose.  See Long v. Fitzgerald, 240 A.D.2d 971, 972-73 (N.Y. App. Div. 1997); FSP, Inc. v. Societe Generale, No. 02 Civ. 4786, 2005 WL 475986, * 10 (S.D.N.Y. Feb. 28, 2005).  He is also correct that at some points, Plaintiffs allege that Veera "knew or should have known" various facts.  (See, e.g., Am. Compl. ¶ 28.)

However, elsewhere in the amended complaint, Plaintiffs plead actual, not merely speculative, knowledge.  (Am. Compl. ¶¶ 103-04.) In addition, Plaintiffs allege facts from which such knowledge can be inferred.  For instance, the Green Plaintiffs allege that Veera guided them through a series of transactions between June and December 2000, (Am. Compl. ¶¶ 57-62), and that Veera intentionally designed these transactions not to make a profit, (id. at ¶ 26).  Veera's knowledge that the Green Plaintiffs could not make money on these transactions can be inferred from these facts.  Accordingly, Plaintiffs have sufficiently alleged Veera's knowledge of the allegedly omitted facts. Fed. R. Civ. P. 9(b) ("knowledge . . . may be averred generally").

¶ 103(1);

(3) the COINS Strategy was designed not to make money, because its trades were structured to be offsetting, Am. Compl. ¶¶ 28, 60, 103(9)-(10), (21);

(4) Defendants needed to register the COINS Strategy as a tax shelter with the IRS, Am. Compl. ¶ 77; and

(5) the legal opinion letters provided to Defendants were "merely a 'form' opinion letter," and not based on independent legal judgment, such that they could not shelter Plaintiffs from legal tax liability,[16] Am. Compl. ¶ 103(4).

Plaintiffs had ready access to some of the allegedly omitted information.  For instance, the IRS policy statements, the implications of which Defendants allegedly failed to disclose to Plaintiffs, were publicly available and cannot support a finding of superior knowledge.  See Aaron Ferer, 731 F.2d at 123 (finding no superior knowledge where the allegedly concealed information was a matter of public record, or was otherwise available).  In addition, the fact that Defendants were sharing fees with their alleged co-conspirators was readily available to Plaintiffs

---

[16] In the cited paragraph, Plaintiffs state only that Defendants failed to inform them that the legal opinion letter was a form letter. Although Plaintiffs never state why this is significant with the clarity the Court gives the allegation here, the Court finds that the complaint, when taken as a whole, supports the Court's formulation of the omission, either directly or by inference.  See, e.g., discussion infra pp. 19-20.

because the CMAs and IMAs that Plaintiffs signed specifically stated that Defendants might do this.  (See, e.g., Beer Aff. Ex. 1 at 2.)

A fact-finder might ultimately find that Plaintiffs had ready access to some, but not all, of the other allegedly omitted information.  For instance, Plaintiffs' own allegations suggest that they had sufficient information about how the COINS Strategy transactions were structured to know that it was highly unlikely, if not impossible, that they would make a profit on these transactions.  (See Am. Compl. ¶¶ 23-24, 26, 37, 39, 41.)  In addition, Plaintiffs may have been able to determine that the COINS Strategy had to be registered as a tax shelter because the Treasury Regulations requiring registration were publicly available.

However, Plaintiffs sufficiently allege that they had no reason to believe that the legal opinion letters they received were merely "form letters," and were not based upon independent legal judgment.  Plaintiffs allege that Defendants offered to provide an independent legal opinion letter.  (See, e.g., Am. Compl. ¶ 42.)  Plaintiffs also allege that Defendants had actually pre-arranged with the law firm that issued these opinion letters to instead provide prefabricated letters that confirmed Defendants' representations to Plaintiffs.  (Am. Compl. ¶ 85.) Knowledge of this pre-arrangement was not readily accessible to

19

Plaintiffs.   Accordingly, Plaintiffs adequately allege that Defendants concealed information that they had a duty to disclose.

### ii.  Misrepresentations

Plaintiffs sufficiently allege that Defendants knowingly misrepresented material facts.

Plaintiffs allege that Defendants made the following misrepresentations:

(1) Plaintiffs would be able to report their losses from the COINS Strategy to the IRS without adjusting them for their gains in the offsetting trades, Am. Compl. ¶¶ 103(5), (7), (20), 40-47, 49, 76;

(2) under IRS regulations, the COINS Strategy trades had a business purpose and economic substance, id. at ¶¶ 103(8)-(11), 47, 51;

(3) Plaintiffs did not need to disclose their participation in the COINS Strategy pursuant to Treasury Department Regulations, id. at ¶ 77;

(4) Plaintiffs would be protected from IRS penalties by the legal opinion letter, id. at ¶¶ 103(2)-(3), 42-43, 45, 47, 49; and

(5) Plaintiffs could make a profit on the COINS Strategy trades, id. at ¶ 103(12), 41, 43, 51. Defendants contend that these were all statements of

opinion, not fact, and thus cannot form the basis for fraud.  (See Beer Mem. L. 19; Beer Reply 8; Veera Mem. L. 15; Veera Reply 8.)

Whether Defendants' statements were predictions about future events, and thus opinions, or misstatements of known facts, depends on what Defendants knew at the time they made these representations.  "An expression or prediction as to some future event, known by the author to be false or made despite the anticipation that the event will not occur, is deemed a statement of a material existing fact, sufficient to support a fraud action." Cristallina S.A. v. Christie, Manson & Woods Int'l, 117 A.D.2d 284, 294 (N.Y. App. Div. 1986); see also Tribune Printing Co. v. 263 Ninth Ave. Realty, Inc., 444 N.E.2d 35, 35 (N.Y. 1982) (finding that if a promissory statement misrepresents the speaker's state of mind, it is a fact and can be the basis for a fraud claim).

For now, the Court must accept as true Plaintiffs' allegations that Defendants knew that the IRS had already deemed the COINS Strategy an illegal tax shelter when they promoted it to Plaintiffs.  The Court must also accept as true that Defendants knew that the transactions could make no profit, that the legal opinion letters were not independent and thus definitely could not shelter Plaintiffs from legal tax liability, and that the transactions were structured such that earning a profit was impossible.  If Defendants knew all this, then their statements, although referred to as future events, were factual

21

misrepresentations.

Accordingly, Plaintiffs have sufficiently alleged that Defendants misrepresented material facts.

### b.   Reliance

Defendants contend that Plaintiffs' claims should be dismissed because the provisions of the CMAs and IMAs, which were signed by some Plaintiffs, bar Plaintiffs from claiming reasonable reliance on Defendants' allegedly fraudulent statements.  For the reasons stated below, the Court finds that the CMAs' and IMAs' provisions do not warrant dismissal of Plaintiffs' claims at this stage.[17]

### i.   Legal Standard

Even if a contract has a provision that states that all of the parties' agreements are merged in the written contract ("merger provision"), that provision cannot be invoked to preclude extrinsic evidence that a party was fraudulently induced to enter into the contract.  See Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993); Golden v. Guaranty Acceptance Capital Corp., 807 F. Supp. 1161, 1164 (S.D.N.Y. 1992) ("The merger clause offers no protection, because a contract

---

[17] Because the Court finds that the Agreements' provisions do not bar Plaintiffs' reliance on Defendants' alleged oral misrepresentations, the Court need not reach Plaintiffs' argument that the Court should declare the Agreements generally void on the grounds that they were fraudulently induced.  (Pls.' Beer Opp'n 9-10, 11-12.)

procured by fraudulent inducement cannot be saved by its own terms").

However, if a contract states that a party disclaims reliance on specific representations ("disclaimer provision"), that party cannot claim that he was fraudulently induced into entering the contract due to his reliance on the disclaimed representations.  See id.  In order for a disclaimer provision to bar a party's reasonable reliance on another party's representations, the provision must be specific, rather than general, in its terms.  See id.  Courts also should weigh whether the disclaimer was negotiated for, or is boiler plate contractual language; and whether it specifically disclaims defenses to the contract's validity.  See Valley Nat. Bank v. Greenwich Ins. Co., 254 F. Supp. 2d 448, 457 (S.D.N.Y. 2003).

### ii.  Application

The Court finds that the merger and disclaimer provisions contained in the CMAs and IMAs that were signed by some of the Plaintiffs do not bar Plaintiffs from relying on the allegedly fraudulent misrepresentations Defendants made to them.

### (a)  Merger Provisions

The CMAs and IMAs contain a merger provision that states that the "[a]greement, including the attached Exhibits, constitutes the entire agreement with respect to the relationship between the parties and supercedes all prior agreements."  (See

23

Beer Aff. Exs. 1-6 at ¶ 20, 7-8 at ¶ 18.)   Under Hanover,
Defendants cannot invoke these provisions to preclude Plaintiffs
from asserting their reliance on alleged misrepresentations that
preceded, and led Plaintiffs to sign, the Agreements.[18]   See
Hanover 7 F.3d at 315.

### (b)   Disclaimer Provisions

The CMAs and IMAs contain a provision that states that the
signing Plaintiff is "a sophisticated investor . . . and receives
tax, legal and accounting advice with respect to [signing
Plaintiff's] assets generally and in respect of the Account [that
signing Plaintiff is retaining Defendants to manage] from persons
other than the Manager [Defendants]."  (See, e.g., Beer Aff. Ex.
1 at ¶ F.)   The Agreements also contain a provision that states
that the signing Plaintiff is retaining the Defendants to
"provide currency management and trading services in respect of
all cash, currencies and over-the-counter forward, swap and
option contracts" covered by the agreement.  (See, e.g., Beer
Aff. Ex. 1 at ¶ A.)

These provisions do not, on their face, bar Plaintiffs from

---

[18] Defendants' reliance on United Artists Theatre Circuit, Inc. v.
Sun Plaza Enter. Corp., 352 F. Supp. 2d 342, 351 (E.D.N.Y. 2005), is
unpersuasive because that case is distinguishable.  In United Artists,
the court treated a merger provision as a disclaimer provision.
Unlike here, the merger provision at issue in United Artists
specifically and expressly disclaimed reliance on any preceding oral
or written statements.  Setting aside the question of whether the
court was correct to so treat the provision, the merger provision in
the CMAs and IMAs contains no such express and specific disclaimer.

relying on any pre-agreement representations allegedly made by
Defendants.  Defendants argue that the fact that the Agreements
expressly state that Plaintiffs were receiving investing advice
from Defendants, but do not expressly state that Plaintiffs were
receiving tax and legal advice from Defendants, is sufficient for
the Court to find that Plaintiffs disclaimed relying on
Defendants for tax and legal advice.[19]  (Beer's Reply 5.)
Perhaps, when taken together, these provisions might <u>imply</u> that
Plaintiffs did not receive any tax or legal advice from
Defendants.  However, the Court is unpersuaded that Plaintiffs,
by agreeing to these provisions, disclaimed in <u>affirmative</u>,
<u>specific</u>, and <u>express</u> terms that they would not rely on any pre-
agreement statements that Defendants made about the tax and legal

---

[19] The Court finds Defendants' other arguments unpersuasive.  For
instance, a fact finder may ultimately decide that it was unreasonable
for Plaintiffs to rely on Defendants' statements regarding the
legality and tax consequences of the COINS Strategy because Defendants
are not lawyers or accountants.  (Beer's Reply 5.)  This, however, is
not the stage to decide such factual questions.  At the motion to
dismiss phase, it is enough that Plaintiffs have sufficiently alleged
their reliance on these statements.  Whether this reliance will
ultimately be found reasonable is an open question.  <u>See</u>, <u>Schlaifer
Nuance & Co. v. The Estate of Andy Warhol</u>, 119 F.3d 91, 98 (2d Cir.
1997) ("[t]he question of what constitutes reasonable reliance is
always nettlesome because it is so fact-intensive").
    Likewise, the fact that Plaintiffs are also suing the lawyers and
accountants named in their amended complaint does not conclusively
establish that Plaintiffs could not have reasonably relied on
Defendants for tax and/or legal advice. (<u>See</u>, <u>e.g.</u>, Beer's Reply 4.)
Simply because Plaintiffs received advice they may deem fraudulent
from other sources does not preclude Plaintiffs from also having
received--and relied-upon similar advice from Defendants.  This is
especially so given that Plaintiffs allege that Defendants are co-
conspirators with these other accountants and lawyers.  Defendants may
raise a factual issue, but they have not pointed to an insufficiency
in Plaintiffs' amended complaint.

consequences of the COINS Strategy.[20]

Accordingly, Plaintiffs have sufficiently alleged their reasonable reliance on Defendants' alleged misrepresentations.

### 3.   Conclusion

For the reasons stated above, the Court DENIES Defendants' motions to dismiss to the extent that Defendants contest the sufficiency of Plaintiffs' allegations that Defendants are directly liable for fraud.

### B.   Defendants' Vicarious Liability

All Plaintiffs seek to hold Defendants liable, not only directly, but also vicariously, for actions taken in furtherance of the allegedly fraudulent promotion and execution of the COINS

---

[20] The fact that the provisions Defendants rely upon are boilerplate that was used in all the CMAs and IMAs also cuts against deeming the provisions to be disclaimers with the effect Defendants urge. See Valley Nat. Bank, 254 F. Supp. 2d at 457.

That the Agreements' provisions do not constitute the disclaimer Defendants urge is illustrated by the cases Defendants cite in which courts have found fraud claims barred by disclaimer provisions. See, e.g., Harsco Corp. v. Segui, 91 F.3d 337, 345 (2d Cir. 1996) (dismissing fraud claim where it was barred by a disclaimer that expressly stated that defendant made no representation regarding a number of specific, enumerated subjects); UniCredito Italiano SPA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485 (S.D.N.Y. 2003) (dismissing fraud claim where plaintiffs' reliance on allegedly fraudulent statements was unreasonable because they signed agreements with defendants that specifically and expressly disclaimed providing the kind of advice plaintiffs relied on); Belin v. Weissler, No. 1998 WL 391114, at *7 (S.D.N.Y. Jul. 14, 1998) (finding plaintiffs' reliance on allegedly fraudulent oral misrepresentations regarding the amount of insurance covering the contracted for investment unreasonable, where the agreement signed by plaintiff contained a disclaimer in which he stated that he had a full opportunity to verify the truth of any oral representations defendant had made to him prior to the agreement).

Strategy.  Specifically, (1) all Plaintiffs seek to hold
Defendants vicariously liable pursuant to a theory of civil
conspiracy, and (2) the Dunigan, Ingstad, and Janssen Plaintiffs
seek to hold one or both Defendants liable pursuant to a theory
of agency.  For the reasons stated below, Plaintiffs have
sufficiently alleged a civil conspiracy, but not an agency,
theory of vicarious liability.

### 1.   Civil Conspiracy

Plaintiffs have sufficiently alleged that Defendants are
vicariously liable for fraud pursuant to a theory of civil
conspiracy.

### a. Legal Standard

In order to sufficiently allege civil conspiracy, a
plaintiff must allege (1) an independent actionable tort, (2) a
corrupt agreement between two or more parties, (3) an overt act
in furtherance of the agreement, (4) the parties' intentional
participation in the furtherance of the agreed to plan, and (5)
resulting damage or injury.  See Kashi v. Gratsos, 790 F.2d 1050,
1055 (2d Cir. 1986).  Because the conspiracy is not an element of
the fraud itself, but a way of attaching vicarious liability,
Plaintiffs allegations need only meet the pleading standard of
Federal Rule of Civil Procedure 8.  See Hecht v. Commerce
Clearing House, Inc., 897 F.2d 21, 26 (2d Cir. 1990) (noting that
conspiracy to defraud need only meet Rule 8's pleading standard);

Fed. R. Civ. P. 8(a)(2) (requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief").

### b.   Application

Plaintiffs have alleged all the necessary elements of civil conspiracy.  First, as discussed above, their allegations suffice to raise an inference of actionable fraud.  Second, they allege a corrupt agreement by claiming that Defendants and their associates designed and promoted the illegal COINS Strategy "according to a predetermined and commonly understood and accepted plan of action."  (Am. Compl. ¶¶ 110-112.)  Third, as described in more detail above, Plaintiffs allege that Defendants took numerous overt acts in furtherance of this plan, inter alia, designing the COINS Strategy, promoting the COINS Strategy to some of the Plaintiffs, and guiding the Plaintiffs through the COINS transactions.  Fourth, Plaintiffs allege that Defendants participated in this plan intentionally.  (Am. Compl. ¶ 111 (alleging that Defendants participated in the agreed to plan "for the purposes of obtaining professional fees from . . . Plaintiffs"); see also id. at ¶¶ 103-106.)  Fifth, Plaintiffs adequately allege injury, including lost fees paid to Defendants and tax penalties.  (Id. at ¶¶ 107, 113-15.)

### 2.   Agency

### a.   Legal Standard

An agency relationship exists when a principal and agent (1) agree that the agent will act for the principal, and (2) both understand that the principal will control the agent in regards to the actions the agent takes on the principal's behalf.  See, In re Parmalat Sec. Litig., 594 F. Supp. 2d 444, 451 (S.D.N.Y. 2009) ("In re Parmalat I"); Maung Ng We & Massive Atlantic Lmtd. v. Merrill Lynch & Co., No. 99 Civ. 9687, 2000 WL 1159835, *4 (S.D.N.Y. Aug. 15, 2000).  "To bind a principal, 'an agent must have authority, whether apparent, actual or implied.'" In re Parmalat I, 594 F. Supp. 2d at 451-52 (quoting Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 122 (2d Cir. 1998)). Actual authority is created by "'written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.'"  Nuevo Mundo, 2004 WL 112948, *4 (quoting Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd., 909 F.2d 698, 702 (2d Cir. 1990)).  Control is an "essential characteristic of the principal-agent relationship." In re Parmalat I, 594 F. Supp. 2d at 451.

### b.  Application

#### i.  Dunigan Plaintiffs

The Dunigan Plaintiffs do not allege that either Defendant (1) made fraudulent misrepresentations to them, or (2) fraudulently concealed material information from them.  The

29

Dunigan Plaintiffs allege only that Defendants' associates took fraudulent actions.  The Dunigan Plaintiffs seek to hold Defendants liable for these associates' alleged fraudulent actions on the theory that Defendants' associates were acting as Defendants' agents.  (Am. Compl. ¶¶ 45, 48.)

The Dunigan Plaintiffs' fraud claim turns, in part, on the allegation that Defendants and their associates kept the true nature of their relationship concealed, deceiving Plaintiffs into thinking that a number of respectable financial services companies were independently associating themselves with the COINS Strategy.  (See Am. Compl. ¶¶ 15, 38.)  Accordingly, Plaintiffs appear to rely on a theory of actual (but hidden), rather than apparent (and thus perceptible), agency.

The Dunigan Plaintiffs assert that Defendants' associates were Defendants' agents.  (Am. Compl. ¶¶ 45, 48.)  They also allege that Defendants and their associates acted in the roles described in the Amended Complaint "according to a predetermined and commonly understood and accepted plan of action."  (Id. at ¶ 111.)  Last, Plaintiffs argue that they have alleged facts from which the Court can infer Defendants' control of their associates, because they allege that Defendants' associates made allegedly fraudulent representations that were similar to those

made by Defendants.[21]   (Pls.' Beer Opp'n 15; Pls.' Veera Opp'n 13.)

Even after the Court draws all inferences in the Dunigan Plaintiffs' favor, the Court concludes that they have failed to make sufficient allegations of agency to survive Defendants' motions to dismiss under the minimal standard required by Rule 8.[22]   Alleging a principal's control of an agent, or alleging

---

[21] Plaintiffs, in opposing these motions, ask the Court to construe the statements of Defendants and their associates as "virtually identical." (Pls.' Beer Opp'n 15; Pls.' Veera Opp'n 13.) However, Plaintiffs do not quote either Defendants' or their associates' statements in the amended complaint. Instead, Plaintiffs generally describe the substance of these statements. In addition, as Plaintiffs described them, there were some notable differences between the statements Defendants allegedly made, and those their associates allegedly made to the Dunigan Plaintiffs. (Compare Am. Compl. ¶ 41 (Defendants told Green Plaintiffs they could potentially "make a substantial amount of money on the investment") with id. at ¶¶ 45-48 (Defendants' associates did not tell Dunigan Plaintiffs that the COINS Strategy had the potential of earning a substantial profit).) Given these inconsistencies, and lacking more precise details about what was said to Plaintiffs, the Court declines to adopt Plaintiffs' characterization of these statements' as nearly identical, but accepts as true that the statements were substantively similar.

[22] Beer suggests that Plaintiffs must plead their agency theory with Rule 9 particularity. (Def. Beer Mem. L. 16.) Because the Court finds that Plaintiffs do not meet even the more liberal Rule 8 pleading standard, the Court need not reach this issue.
    Courts have required that agency be pled with Rule 9 particularity where an apparent agency relationship was an integral element of the alleged fraud. See Kolbeck v. Lit America, Inc., 923 F. Supp. 557, 569 (S.D.N.Y. 1996), aff'd at 152 F.3d 918, 1998 WL 406036, at *1 (2d Cir. 1998) (holding that, where a third-party allegedly misled plaintiffs into believing he was defendant's agent, the agency relationship was an integral element of the fraud such that plaintiffs had to plead it with Rule 9(b) particularity).
    Applying Rule 9 made sense in Kolbeck because, in that case, the plaintiffs were party to the events that created the appearance of the agent's authority to act on behalf of the alleged principal, and thus could plead the facts with Rule 9 particularity. But Kolbeck's logic may not apply in this case where actual agency is alleged. See In re Parmalat Sec. Litig., 375 F. Supp. 2d 278, 294 (S.D.N.Y. 2005)

facts that give rise to an inference of such control, is an essential element of pleading an agency theory of vicarious liability. See In re Parmalat I, 594 F. Supp. 2d at 451. The fact that Defendants and their associates described the substance and legality of the COINS Strategy in similar terms, on its own, does not give rise to any such inference. Compare Nuevo Mundo, 2004 WL 112948, *5 (finding allegation that putative principal and agent used the same accounting standards insufficient to support inference of an agency relationship) with In re Parmalat Sec. Litig., 375 F. Supp. 2d 278, 294-95 (S.D.N.Y. 2005) (finding allegations of agency relationship sufficient where plaintiffs alleged that putative agent sought direction and help from putative principal and that putative principal helped direct aspects of the alleged fraud). Accordingly, the Dunigan Plaintiffs have failed to allege Defendants' vicarious liability pursuant to a theory of agency.

### ii.  The Janssen and Ingstad Plaintiffs

The Janssen Plaintiffs allege that only Veera made fraudulent misrepresentations or omissions to them; the Janssen

---

("Parmalat II") (distinguishing Kolbeck, in part on the grounds that Kolbeck involved allegations of apparent rather than actual authority). Demanding Rule 9 particularity would seem to make less sense in a case such as this one, where plaintiffs contend that Defendants and their associates hid their agency relationship. Where an agency relationship is hidden, plaintiffs cannot be expected, at the pleading stage, to know the particulars of how, when, and where the agency relationship was created. Thus, they should not be required to plead that relationship with Rule 9 particularity.

Plaintiffs seek to hold Beer vicariously liable for these fraudulent actions pursuant to the theory that Veera was Beer's agent.  (Am. Compl. ¶ 43.)  Similarly, the Ingstad Plaintiffs allege that only Beer made fraudulent misrepresentations or omissions to them; the Ingstad Plaintiffs seek to hold Veera vicariously liable for these fraudulent actions pursuant to the theory that Veera was Beer's agent.[23]  (Id. at ¶ 51.)

The Janssen and Ingstad Plaintiffs allege that Defendants acted in these "respective roles . . . according to a predetermined and commonly understood and accepted plan of action."  (Id. at ¶ 111.)  Elsewhere, Plaintiffs allege that Defendants were both employees, (id. at ¶ 15), and/or principals, (id. at ¶ 17), of Bricolage, a firm founded by Beer and involved with the COINS Strategies.

The Janssen and Ingstad Plaintiffs' allegations do not suffice to allow their fraud claim to proceed against Defendants pursuant to a theory that Defendants were each other's agents. When considered singly, neither the Janssen Plaintiffs nor the Ingstad Plaintiffs allege any facts from which the Court could infer either that Beer controlled Veera's fraudulent actions or

---

[23] The Insgstad Plaintiffs also seek to hold Defendants liable pursuant to the theory that one of Defendants' associates was Defendants' agent.  (Am. Compl. ¶ 50.)  Although the Ingstad Plaintiffs and Dunigan Plaintiffs allege that different associates were Defendants' agents, the Ingstad Plaintiffs' allegations of agency otherwise mirror those made by the Dunigan Plaintiffs and are insufficient for the reasons discussed supra pt. II.B.2.b.ii.

that the converse was true.[24]  Accordingly, the Janssen and
Ingstad Plaintiffs' allegations are insufficient to support their
fraud claims against Defendants on a theory of vicarious
principal-agent liability.

### C.   Conclusion

For the reasons stated above, the Court DENIES Defendants'
motions to dismiss with respect to Plaintiffs' claims of fraud
and civil conspiracy.  The Green, Maletis, Janssen, and Ingstad
Plaintiffs have sufficiently alleged Beer and/or Veera's direct
liability for fraud; all Plaintiffs have sufficiently alleged
Defendants' indirect liability for fraud pursuant to a theory of
civil conspiracy.  However, the Court agrees with Defendants that
the Dunigan, Janssen, and Ingstad Plaintiffs' allegations fail to
support an agency theory of Defendants' vicarious liability for
fraud.

### CONCLUSION

Defendants' motions to dismiss, (D.E. 31), are DENIED as to
all claims; however, the Court finds that Plaintiffs have failed
to sufficiently allege a theory of agency.  Veera shall properly
docket his motion to dismiss by April 15, 2009.  After he has

---

[24] Plaintiffs have arguably alleged facts sufficient to support
Defendants' vicarious liability for each other's fraudulent actions
pursuant to a theory that they were engaged in a joint venture or
partnership, but Plaintiffs do not advance any such theory.  See 3 Am.
Jur. 2d Agency § 4 (distinguishing a joint venture from a partnership
and from an agency relationship).

34

done so, the Clerk of the Court is directed to record the motion as DENIED.

Counsel for all parties shall appear before the Court at 11:00 AM on Tuesday April 7, 2009 for a scheduling conference. Prior to attending the scheduling conference, counsel for all parties shall (1) review the Court's model scheduling order, available at http://www1.nysd.uscourts.gov/judge_info.php?id=35, (2) confer and attempt to reach agreement as to what dates the parties propose that the Court so order in its Rule 16(b) scheduling order, and (3) submit to the Court, by fax, a joint proposed scheduling order by 5:00 PM on Friday, April 3.  To the extent that the parties cannot agree on any proposed date, the joint scheduling order shall indicate which party proposes which date.

SO ORDERED.

Dated:    New York, New York
          March 30, 2009

                                  Kimba M. Wood
                              United States District Judge

35