```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
ALLAN GREEN, HANA GREEN, WHITE      : 06 Civ. 4156 (KMW) (JCF)
BUFFALO, LLC, DEAN JANSSEN,         :
KATHLEEN JANSSEN, JAMES MICHAEL     :        MEMORANDUM
DUNIGAN, NENA M. DUNIGAN, ABILENE   :        AND  ORDER
TRADING, LLC, CHRIS C. MALETIS      :
III, KRISTINE K. MALETIS, THOMAS M.:
MALETIS, SUSAN E. MALETIS, JAMES D.:
INGSTAD, VICTORIA S. INGSTAD,       :
THOMAS E. INGSTAD, FARGO TRADING,  :
LLC, and TEI TRADING, LLC,          :
                                    :
            Plaintiffs,             :
                                    :
     - against -                    :
                                    :
ANDREW D. BEER and SAMYAK C. VEERA,:
                                    :
            Defendants.             :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

The plaintiffs in this action allege that the defendants, Andrew D. Beer and Samyak C. Veera, committed fraud in promoting a tax shelter scheme known as the "COINS Strategy."  Defendant Beer now moves for an order compelling the plaintiffs to produce information falling into four categories:

(1) Documents as to which the plaintiffs have asserted the attorney-client privilege, but which were created by or shared with non-parties who are not attorneys;

(2) Documents concerning legal advice regarding settlements that the plaintiffs entered into with the Internal Revenue Service and other taxing authorities concerning their liability for COINS Strategy investments;

1

(3) Documents regarding legal advice that the plaintiffs received in connection with their initial investment in the COINS Strategy; and

(4) Documents regarding each category of damages alleged by the plaintiffs.

I will address each set of documents in turn.

<u>Communications Shared with Non-Attorneys</u>

The plaintiffs have asserted the attorney-client privilege with respect to a variety of communications that were authored by or sent to persons who are neither attorneys nor parties to this litigation.  Those persons have been identified as Paul Lenker, financial advisor to plaintiffs James Michael and Nena M. Dunigan; Brenda Lazzaroni, a certified public accountant who possessed financial information regarding plaintiffs Dean and Kathleen Janssen; Terry Nielsen, the Chief Financial Officer of Ace Tomato Co., Inc., a company owned by the Janssens; and Daniel Green, the son of plaintiffs Allan and Hana Green.  (Plaintiffs' Amended Supplemental Privilege Log, attached as Exh. A to Letter of David L. Katsky dated June 9, 2010 ("Katsky 6/9/10 Letter"); Plaintiffs' Second Supplemental Privilege Log, attached as Exh. B to Katsky 6/9/10 Letter; Amended Affidavit of Paul Lenker dated June 14, 2010 ("Lenker Aff."), attached as Exh. 1 to Letter of Jeven Sloan dated June 15, 2010; Affidavit of Mark Foster dated June 12, 2010 ("Foster Aff."), attached as Exh. 3 to Letter of Jeven Sloan dated

June 14, 2010 ("Sloan 6/14/10 Letter"); Affidavit of Terry Nielsen dated June 14, 2010 ("Nielsen Aff."), attached as Exh. 4 to Sloan 6/14/10 Letter; Affidavit of Daniel Green dated June 14, 2010 ("Green Aff."), attached as Exh. 1 to Sloan 6/14/10 Letter).

Federal jurisdiction in this case is based on diversity, and the substantive claims are governed by New York law.  See Green v. Beer, No. 06 Civ. 4156, 2009 WL 911015, at *4-5 (S.D.N.Y. March 31, 2009); Green v. Beer, No. 06 Civ. 4156, 2007 WL 576089, at *2-6 (S.D.N.Y. Feb. 22, 2007).  Consequently, privilege issues are also controlled by New York law.  Fed. R. Evid. 501; Dixon v. 80 Pine Street Corp., 516 F.2d 1278, 1280 (2d Cir. 1975); Allied Irish Banks, p.l.c. v. Bank of America, N.A., 240 F.R.D. 96, 102 (S.D.N.Y. 2007).  And, in New York, the attorney-client privilege is codified in the Civil Practice Law and Rules:

> [A]n attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication[.]

N.Y.C.P.L.R. § 4503(a)(1).

Nevertheless, the New York Court of Appeals has characterized the attorney-client statute as a "'mere re-enactment of the common law rule.'"  Spectrum Systems International Corp. v. Chemical Bank, 78 N.Y.2d 371, 377, 575 N.Y.S.2d 809, 813-14 (1991) (quoting Hurlburt v. Hurlburt, 128 N.Y. 420, 424, 28 N.E. 651, 652 (1891)).

Accordingly, New York courts rely on the common law, including federal case law, to evaluate claims of privilege. See Spectrum Systems, 78 N.Y.2d at 377, 575 N.Y.S.2d at 814; Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C., 191 Misc. 2d 154, 165 n.10, 738 N.Y.S.2d 179, 189 n.10 (Monroe Sup. Ct. 2002).  In any event, the parties in this case have cited exclusively to federal cases, and there appears to be no material distinction between New York law and the common law as construed by the federal courts in this jurisdiction.

Under the common law, the attorney-client privilege embodies the principle that:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997) (quotation marks and citation omitted); see also Kingsway Financial Services, Inc. v. Pricewaterhouse-Coopers LLP, No. 03 Civ. 5560, 2007 WL 473726, at *7 (S.D.N.Y. Feb. 14, 2007); In re Rivastigmine Patent Litigation, 237 F.R.D. 69, 73-74 (S.D.N.Y. 2006);  Bank Brussels Lambert v. Credit Lyonnais (Suisse)

<u>S.A.</u>, 160 F.R.D. 437, 441 (S.D.N.Y. 1995).[1]

"The party claiming the benefit of the attorney-client privilege has the burden of establishing all the essential elements." <u>United States v. Adlman</u>, 68 F.3d 1495, 1500 (2d Cir. 1995). This includes the responsibility of demonstrating that the privilege has not been waived. <u>See</u> <u>Allied Irish Banks</u>, 240 F.R.D. at 103; <u>John Blair Communications, Inc. v. Reliance Capital Group, L.P.</u>, 182 A.D.2d 578, 579, 582 N.Y.S.2d 720, 721 (1st Dep't 1992).

Generally, communications with non-lawyers such as accountants are not privileged. <u>Adlman</u>, 68 F.3d at 1499. Similarly, disclosure of an attorney-client communication to someone outside the attorney-client relationship works a forfeiture of the privilege. <u>See</u> <u>Allied Irish Banks</u>, 240 F.R.D. at 103; <u>People v. Mitchell</u>, 58 N.Y.2d 368, 373, 461 N.Y.S.2d 267, 269-70 (1983); <u>Delta Financial Corp. v. Morrison</u>, 13 Misc. 3d 441, 444-45, 820 N.Y.S.2d 745, 748 (Nassau Sup. Ct. 2006). The Second Circuit, however, has identified an exception to this principle:

> Under certain circumstances, [] the privilege for communication with attorneys can extend to shield communications to others when the purpose of the communication is to assist the attorney in rendering

---

[1] This common law definition is sometimes truncated to three elements such that the party invoking the privilege must show "(1) a communication between client and counsel  that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." <u>In re County of Erie</u>, 473 F.3d 413, 419 (2d Cir. 2007)  (citing <u>United States v. Construction Products Research, Inc.</u>, 73 F.3d 464, 473 (2d Cir. 1996)).

advice to the client.  Thus, in [United States v. Kovel,
296 F.2d 918 (2d Cir. 1961)], we recognized that the
privilege would extend to communications by an attorney's
client to an accountant hired by the attorney to assist
the attorney in understanding the client's financial
information.  Recognizing that the privilege would surely
apply where a client who spoke only a foreign language
furnished his confidential information to an interpreter
employed by the attorney to translate for the attorney's
benefit, Judge Friendly observed that accounting concepts
can be as incomprehensible as a foreign language to
attorneys.  "Hence the presence of an accountant . . .
while the client is relating a complicated tax story to
the lawyer, ought not destroy the privilege. . . ." Id.
at 922.

Adlman, 68 F.3d at 1499; see also Urban Box Office Network, Inc. v.

Interfase Managers, L.P., No. 01 Civ. 8854, 2006 WL 1004472, at *3

(S.D.N.Y. April 17, 2006) ("[A]n agent, such as a financial

advisor, may have communications with an attorney that 'are covered

by the attorney-client privilege if the financial advisor's role is

limited to helping a lawyer give effective advice by explaining

financial concepts to the lawyer.'" (quoting Export-Import Bank of

the United States v. Asia Pulp & Paper Co., 232 F.R.D. 103, 113

(S.D.N.Y. 2005))); People v. Osorio, 75 N.Y.2d 80, 84, 550 N.Y.S.2d

612, 615 (1989) ("[C]ommunications made to counsel through a hired

interpreter, or one serving as an agent of either attorney or

client to facilitate communication, generally will be

privileged.").

Nevertheless, this exception is narrowly construed.  "[A]

communication between an attorney and a third party does not become

shielded by the attorney-client privilege solely because the

communication proves important to the attorney's ability to represent the client." United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999). Thus, when an attorney seeks out a third party to provide information rather than to act as a translator for client communications, the communications between the attorney and the third party are not privileged. Id. at 139-40. "In order to avail itself of the 'agency' exception and avoid the consequences of a waiver," the party asserting the privilege must therefore establish two elements. National Education Training Group, Inc. v. Skillsoft Corp., No. M8-85, 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999). First, it must show that the client had a reasonable expectation of confidentiality with respect to communication with the third party. Id. Second, the privilege holder "must establish that disclosure to a third party . . . was necessary for the client to obtain informed legal advice." Id. "[T]he 'necessity' element means more than just useful and convenient, but rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communication." Id.; accord In re Application Pursuant to 28 U.S.C. § 1782, 249 F.R.D. 96, 101-02 (S.D.N.Y. 2008) (finding no privilege for communications between "intermediary" and counsel that helped counsel clarify factual issues but were not necessary); Allied Irish Banks, 240 F.R.D. at 104 ("[W]here the third party's presence is merely 'useful' but not 'necessary,' the privilege is

7

lost.").

By these standards, none of the communications with third parties at issue in this case are privileged.  It may be assumed in each instance that the communications were reasonably intended to be confidential.  However, the plaintiffs have not established that the participation of the third parties was necessary, let alone "nearly indispensable" to the provision of legal advice to the clients.  For example, Mr. Lenker, the financial advisor for the Dunigan plaintiffs, attests that he "served solely as a provider of factual information between [counsel] and the Dunigans in connection with legal services [counsel] was providing to the Dunigans."  (Lenker Aff., ¶ 8).  In connection with other communications, Mr. Lenker states, "I was acting as the Dunigans' agent with respect to the transmission of information between [counsel] and the Dunigans, which I understood was necessary for [counsel's] performance of legal services for the Dunigans." (Lenker Aff., ¶ 13).  Indeed, the information may have been "necessary," but Mr. Lenker's participation as an intermediary was not.  There has been no showing that he served any specialized function or acted as more than a mere conduit for factual information.

Similarly, Ms. Lazzaroni, an accountant, and Mr. Nielsen, an officer of a Janssen family business, simply transmitted factual information to counsel on behalf of the Janssen plaintiffs.

(Foster Aff., ¶¶ 4-8; Nielsen Aff., ¶¶ 3-7). Their function, while helpful to the Janssens, was likewise not necessary to the provision of legal advice.[2]

The closest that the plaintiffs come to satisfying the "necessity" prong is with Daniel Green, the son of the Green plaintiffs. He received electronic mail communications from counsel on behalf of his parents and explains:

> My parents are not proficient in the use [of] electronic mail and, due to the time-sensitive nature of these communications, it was necessary for these communications to be delivered to my email address to ensure a timely receipt. My parents regularly rely on me to send and receive emails for them.

(Green Aff., ¶ 7). Lack of technical competence, however, is not the equivalent of an inability to communicate. Mr. Green was not required to act as a translator between his parents and their attorney. Rather, he simply expedited their communications. There is no evidence that other, confidential, means of communication would not have been sufficient; the assertion that "it was necessary for these communications to be delivered to [Mr. Green's] email address to ensure a timely receipt" is simply too conclusory to support the privilege.

The plaintiffs' claim of privilege is therefore overruled with

---

[2] The parties dispute whether Ms. Lazzaroni is alleged to be a co-conspirator of the defendants and, if so, whether this undermines any claim of privilege with respect to communications to which she was a party. (Katsky 6/9/10 Letter at 3; Sloan 6/14/10 Letter at 3). This issue need not be resolved in light of the determination that the claim of privilege fails for other reasons.

respect to the documents that consist of communications with non-parties or that were shared with non-parties.[3]

Legal Advice Concerning Audits and Settlements

At the time they first invested in the COINS Strategy, the plaintiffs received an opinion letter stating that (1) if they were audited, the IRS would likely disallow the claimed deductions, but (2) if they disputed the disallowance and litigated, they would probably prevail in court.  In fact, the IRS and other taxing authorities did disallow deductions related to the COINS Strategy and imposed penalties and interest on the plaintiffs.  Rather than litigating, however, each plaintiff, with the advice of counsel, entered into a settlement.  They now seek to recover from the defendants the amounts paid in those settlements.  Defendant Beer argues that the plaintiffs have therefore placed "at issue" the legal advice they received in connection with accepting the settlements and should be compelled to produce all communications relating to that advice.  (Katsky 6/9/10 Letter at 4).

The plaintiffs contend that the legal advice they received has not been placed at issue because they do not plan to rely on it:

> The Plaintiffs intend to rely on expert testimony to
> establish the objective reasonableness of accepting the

_____

[3] These documents have been identified as PL-GEN 205-209, PL-GEN 210-211, DUNIGAN 02894, DUNIGAN 02895-02896, DUNIGAN 02897, DUNIGAN 2584, DUNIGAN 2855, JAN 9176, JAN 9170-9174, JAN 10464-10483, JAN 10529-10535, JAN 10536, JAN 10575-10658, JAN 8829, JAN 9077, JAN 9108-9149, JAN 9219-9220, JAN 9342, JAN 9518-9526, and JAN 9558-9637.

> IRS settlement offer, which had an extremely high participation rate. This expert testimony will not rely on the individualized advice given to any particular plaintiff, but rather on the terms of the IRS settlement offer, the "cost" of rejecting the offer and engaging in a prolonged battle in Tax Court, the risks associated with litigating in Tax Court, and recent criminal, tax, and administrative developments related to tax shelters such as the COINS Strategy.

(Sloan 6/14/10 Letter at 4). Accordingly, the plaintiffs argue that the documents related to legal advice concerning the settlements remain privileged and should not be disclosed.

The Second Circuit has succinctly summarized the principles that govern this dispute:

> It is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted. See, e.g., United States v. Nobles, 422 U.S. 225 (1975); United States v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991). The loss of the privilege in these circumstances is sometimes described as implied waiver, see, e.g., In re Grand Jury Proceedings, 219 F.3d 175, 182-84 (2d Cir. 2000); Bilzerian, 926 F.2d at 1293, sometimes as "at issue" waiver because it results from the party having placed a contention at issue, see, e.g., Granite Partners, L.P. v. Bear, Stearns & Co., Inc., 184 F.R.D. 49, 54 (S.D.N.Y. 1999); Worthington v. Endee, 177 F.R.D. 113, 116-17 (N.D.N.Y. 1998); 6 Moore's Federal Practice 26.70[6][c] at 26-226 (3d ed. 1997) ("A party also impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue.").

John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir.2003) (emphasis omitted). The court then described the basis for this doctrine:

> Forfeiture of this nature is justified by considerations

of fairness to the adversary. In some circumstances, courts have ruled that it would be unfair for a party asserting contentions to an adjudicating authority to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions. While we have sometimes used broad language in describing the doctrine, such as generalizing about the incompatibility of using the assertions as a "sword" while using privileges attaching to related matter as a "shield," because the doctrine is rooted in fairness we have also cautioned against broad generalizations, stressing that "[w]hether fairness requires disclosure . . . is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted." <u>In re Grand Jury</u>, 219 F.3d at 183.

<u>Id.</u>

More recently, the Circuit provided additional guidance with respect to implied waiver of privilege. It noted first that such waivers occur in three circumstances: "'when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense. . . .'" <u>County of Erie</u>, 546 F.3d at 228 (quoting <u>Sedco International, S.A. v. Cory</u>, 683 F.2d 1201, 1206 (8th Cir. 1982)). The court went on to note that "[t]he key to a finding of implied waiver in the third instance is some showing by the party arguing for a waiver that the opposing party <u>relies</u> on the privileged communication as a claim or defense or as an element of a claim or defense." <u>Id.</u> It identified an advice-of-counsel defense as the "quintessential example" of such an implied waiver. <u>Id.</u>

12

In County of Erie, the district court had found an implied waiver based on the test articulated in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975). Id. at 226. Pursuant to that framework, a privilege would be found to have been forfeited if:

> (1) the assertion of the privilege was the result of some affirmative act, such as filing suit or pleading in response to a claim; (2) through the affirmative act, the asserting party has put the protected information at issue by making it relevant to the claim; and (3) the application of the privilege would have denied the opposing party access to information vital to the defense.

Id. (citations omitted). The Circuit, however, determined that "the Hearn test cuts too broadly." Id. at 229. In particular, it found that the "relevance" prong made it too easy to find a waiver of privilege because "privileged information may be in some sense relevant in any lawsuit." Id. Accordingly, the court held that in order to serve as the basis for finding forfeiture, "a party must rely on privileged advice from his counsel to make his claim or defense." Id.

Here, the legal advice that the plaintiffs received prior to settling with the IRS and other taxing authorities is no doubt relevant to their claim for reimbursement of what they paid in those settlements. However, they are not relying on that advice to demonstrate the reasonableness of their decision to settle. Consequently, under County of Erie, the attorney-client privilege has not been forfeited, and defendant Beer's application to compel production of the privileged documents must be rejected.

13

Legal Advice Concerning Plaintiffs' Initial Investment

Next, defendant Beer notes that at the same time that the plaintiffs allege that the defendants were making false representations and omissions with respect to the COINS Strategy, at least some of the plaintiffs were receiving legal advice from their own attorneys.  According to defendant Beer, by asserting claims of fraud, the

> plaintiffs have put <u>all</u> advice they received in connection with COINS at issue in this litigation, not merely that which they now claim was fraudulent.  Any legal advice that plaintiffs received from attorneys other than opinion counsel is not merely relevant to plaintiffs' claims, but also bears directly on the extent to which plaintiffs relied on representations made by members of the alleged conspiracy.  Plaintiffs should not be permitted on the one hand to assert that they received fraudulent advice (and reveal this advice to the Court) while at the same time refusing to disclose other advice they received contemporaneously regarding the same subject matter and on which they may have also relied.

(Katsky 6/9/10 Letter at 5).

Again, however, the defendant's argument is inconsistent with the narrow view of waiver mandated by <u>County of Erie</u>.  Indeed, cases both before and after that decision addressed the issue now presented: whether by asserting reliance, a party forfeits the privilege with respect to any legal advice that might undermine the position that such reliance was reasonable.  For example, in <u>Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.</u>, 32 F.3d 851, 863-64 (3d Cir. 1994), the court found that the attorney-client privilege is not waived merely because a party's state of mind is at issue;

14

while the facts that the party was aware of may be discovered even if the party learned those facts from counsel, communications with counsel remain privileged.  Accord Johnson Matthey, Inc. v. Research Corp., No. 01 Civ. 8115, 2002 WL 1728566, at *4 (S.D.N.Y. July 24, 2002).  Similarly, in Laborers Local 17 Health Benefit Fund v. Philip Morris, Inc., No. 97 Civ. 4550, 1998 WL 414933, at *2 (S.D.N.Y. July 23, 1998), the court rejected the assumption "that the mere assertion of a fraud theory or other legal claim implicating the plaintiff's knowledge is sufficient to trigger a broad waiver of the plaintiff's attorney-client privilege . . . ." And, in Standard Chartered Bank PLC v. Ayala International Holdings (U.S.) Inc., 111 F.R.D. 76, 85 (S.D.N.Y. 1986), the court observed that finding an implied waiver under circumstances such as those here would render the privilege "a nullity in all the vast commercial litigation in which fraud or reliance is an issue." More recently, a court, relying on County of Erie, rejected an argument that a party had forfeited privilege by asserting a lack of knowledge defense.  Weiss v. National Westminister Bank, PLC, Nos. 05 CV 4622, 07 CV 916,  2008 WL 5115027, at *2 (E.D.N.Y. Dec. 3, 2008); see also In re MetLife Demutualization, No. 00 CV 2258, 2007 WL 1017603, at *10 (E.D.N.Y. March 30, 2007) (observing that denial of allegations of bad faith and fraud not equivalent to affirmative claim of good faith or reliance on advice of counsel), rev'd in part on other grounds, 495 F. Supp. 2d 310 (E.D.N.Y.

2007), rev'd by <u>Murray v. Metropolitan Life Insurance Co.</u>, 583 F.3d 173 (2d Cir. 2009); <u>Weizmann Institute of Science v. Neschis</u>, No. 00 Civ. 7850, 2004 WL 540480, at *4 (S.D.N.Y. March 17, 2004) (noting rule that privilege not waived where attorney-client relationship not affirmatively placed at issue); <u>Paramount Communications, Inc. v. Donaghy</u>, 858 F. Supp. 391, 395-97 (S.D.N.Y. 1994) (holding that where party claimed reliance on information provided by adversary, no waiver of privileged communications even if useful to show that advice of attorney affected adversary's course of conduct); <u>Chase Manhattan Bank N.A. v. Drysdale Securities Corp.</u>, 587 F. Supp. 57, 58 (S.D.N.Y. 1984) (holding that where plaintiff alleged reliance on fraudulent opinion issued by adversary, disclosure of advice of adversary's attorney not warranted merely to undermine claim of reliance).

In this case, the plaintiffs have done no more than allege reliance; they have not affirmatively placed at issue the advice they may have received from their counsel prior to investing in the COINS Strategy.  Therefore, that advice remains privileged.

<u>Documents Substantiating Plaintiffs' Damage Claims</u>

Finally, defendant Beer sought production of documents substantiating the plaintiffs' claimed damages.  The plaintiffs represented that they had produced all such documents, and the defendant accepted that representation.  (Letter of Adrienne B. Koch dated June 15, 2010 at 7).  Accordingly, that issue is moot.

16

Conclusion

For the reasons set forth above, the plaintiffs shall promptly

produce the documents identified on their privilege logs as having

been authored by or shared with third parties.    In all other

respects, defendant Beer's motion to compel discovery is denied.

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       July 2, 2010

Copies mailed this date:

Jeven R. Sloan, Esq.
Whatley Drake & Kallas, LP
2001 Park Place North
Suite 1000
Birmingham, Alabama 35203

Jeffrey H. Daichman, Esq.
Kane Kessler
1350 Avenue of the Americas
New York, New York 10019

W. Ralph Canada, Jr., Esq.
Canada-Withrow, LLP
233 E. College Street
Grapevine, TX 76051

David R. Deary, Esq.
Loewinsohn Flegle Deary, LLP
12377 Merit Drive, Suite 900
Dallas, TX 75251

David L. Katsky, Esq.
Adrienne B. Koch, Esq.
Katsky Korins, LLP
605 Third Avenue
New York, New York 10158

17

Megan L. Brackney, Esq.
Kostelanetz & Fink, LLP
7 World Trade Center, 34th Floor
New York, New York 10007

Michael E. Keyes, Esq.
Oppenheimer Wolff & Donnelly LLP
Plaza VII, Suite 3300
45 South Main Street
Minneapolis, MN 55402

Michael P. Zweig, Esq.
Loeb & Loeb LLP
345 Park Avenue
New York, New York 10154